United States District Court
Southern District of Texas
**ENTERED**
June 10, 2020
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| GARCIA HAMILTON & ASSOCIATES, L.P., § § Plaintiff, § VS. § § RBC CAPITAL MARKETS, LLC, § § Defendant. § | CIVIL ACTION NO. 4:19-CV-4141 |

### ORDER

Pending before the Court is Defendant RBC Capital Markets, LLC's ("RBC") Motion to Dismiss for Lack of Personal Jurisdiction. (Doc. No. 10). Plaintiff Garcia Hamilton & Associates, L.P. ("GHA") filed a response thereto (Doc. No. 11) and RBC replied (Doc. No. 12). The Court also allowed GHA to file a partial sur-reply. (*See* Doc. No. 13, Ex. 1; *see also* Doc. No. 16). Finally, RBC filed a response to GHA's sur-reply. (Doc. No. 21).

Having carefully considered the parties' various arguments, the record in this case, and the applicable law, the Court reluctantly grants RBC's motion and dismisses GHA's case without prejudice.

### I.  Background

According to GHA's complaint, on May 7, 2019, E.I. Du Pont DE Nemours ("DuPont") announced the approval of a separation of DowDuPont's Agriculture Division. (Doc. No. 1 at 3). That separation allowed DuPont the ability to pay bond holders the face value of their DuPont bonds because the DuPont bonds were "callable."[1] (*Id.*). GHA pleaded that it sold nearly 22.5 million DuPont bonds to RBC on May 8, 2019 at a price of $100.337 per bond. (*Id.*). The

---

[1] It is unclear from the pleadings why the separation of the Agricultural Division made the DuPont bonds callable or why this feature was not widely known before May 10, 2019. The Court nevertheless accepts those allegations as true for purposes of this order. It is worth noting that RBC does not dispute GHA's assertion that the bonds became callable.

following day (May 9th), GHA sold RBC another 47 million DuPont bonds at a price of $100.350 per bond. (*Id.*). On May 9th—the same day GHA sold the 47 million DuPont bonds to RBC—RBC allegedly resold those same bonds to a third party.[2] (*Id.*).

On May 10, 2019, when Bloomberg updated its online system and displayed the fact that the DuPont bonds were callable, it became clear that RBC allegedly purchased and resold DuPont bonds at a price above their face value. (*See id.*). In other words, the callable feature allegedly made the bonds less valuable. Once the Bloomberg system was updated, the third party purchaser apparently demanded that RBC reverse their transaction; RBC complied with that request. (*Id.*). On May 16th—after GHA received the sales proceeds from the May 9th transaction (or after the transaction "settled")—RBC demanded that GHA cancel the May 9th transaction; alternatively, RBC asked GHA to refund an "overpayment" of $161,641.58. (*Id.* at 4). RBC allegedly argued that the bonds sold at the May 9th sale should have been sold at virtually face value ($100.004) instead of the price it paid ($100.350). (*Id.*). RBC also supposedly told GHA that GHA should have to cancel and correct the trade since RBC had to do so with the third party. (*Id.*).

Over the next few months, RBC sent GHA several demands for a refund of the alleged overpayment based on the theory of mutual mistake, claiming it required reformation of their contract. (*See id.*). GHA repeatedly responded that there was no evidence of a mistake or error. (*Id.* at 4–5). On October 7, 2019, GHA received a letter from RBC's counsel that threatened to file a lawsuit in the Southern District of New York if GHA did not send RBC approximately $161,000 by October 16. (*Id.* at 5). GHA maintained that there was no mutual mistake and that it did not intend to refund the alleged overpayment. (*Id.* at 5–6).

---

[2] RBC asserts in its motion to dismiss that the bonds were actually sold to two third parties, one in New York and one in California. (Doc. No. 10 at 7).

2

Following these exchanges, GHA filed this declaratory judgment lawsuit seeking a judgment declaring that: (1) the parties' May 9, 2019 bond sale was not formed under a mutual mistake; (2) GHA did not breach the parties' contract; (3) GHA did not breach the duty of good faith and fair dealing; and (4) RBC is not entitled to a judgment for unjust enrichment. (*Id.* at 6). RBC responding by filing a motion to dismiss for lack of personal jurisdiction. (Doc. No. 10). GHA filed a response and RBC replied. (Doc. Nos. 11 and 12). Additionally, GHA filed a sur-reply with the Court's approval (at least as to Section A). (Doc. No. 13, Ex. 1; Doc. No. 16). With the Court's permission, RBC filed a response to GHA's sur-reply.[3] (Doc. Nos. 16 and 21).

A few weeks after this suit was filed, RBC filed a lawsuit against GHA in the Southern District of New York for: (1) reformation; (2) breach of contract; (3) breach of good faith and fair dealing; and (4) unjust enrichment. (*See generally* S.D.N.Y. Case No. 1:19-cv-10247-NRB). GHA filed a motion to dismiss for lack of personal jurisdiction, or alternatively to stay or transfer the case to this Court. (*Id.* at Doc. No. 9). Since this lawsuit was the "first filed," the District Court in New York graciously stayed its case pending this Court's decision concerning RBC's motion to dismiss. (*Id.* at Doc. No. 13).

## II.      Legal Standard

A claim against a defendant over whom the court lacks personal jurisdiction must be dismissed. FED. R. CIV. P. 12(b)(2). When a district court rules on a Rule 12(b)(2) motion without a hearing, as is the case here, the plaintiff must make a prima facie showing of jurisdiction. *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). A court may consider the contents of the record, including affidavits or other recognized methods of discovery, in deciding whether to exercise specific jurisdiction. *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th

---

[3] Apparently confused by the Court's order, GHA filed a response to its own sur-reply. (Doc. No. 20). However, once it realized its mistake, GHA requested that document be withdrawn, which the Court granted. (Doc. Nos. 22 and 24).

3

Cir. 1985). Courts accept a plaintiff's non-conclusory, uncontroverted allegations as true, and resolve conflicts between the facts contained in the parties' affidavits in the plaintiff's favor. *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868 (5th Cir. 2001).

In a diversity action, a federal court may exercise personal jurisdiction over a non-resident defendant if: (1) the long-arm statute of the forum state allows the exercise of personal jurisdiction over the defendant; and (2) the exercise of personal jurisdiction over that defendant is consistent with the Fourteenth Amendment to the United States Constitution. *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 398 (5th Cir. 2009). The two-part jurisdictional inquiry collapses into a single step in this forum because the Texas long-arm statute extends to the limits of federal due process. TEX. CIV. PRAC. & REM. CODE § 17.042; *Johnston*, 523 F.3d at 609; *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex. 1990). To meet the requirements of due process, the plaintiff must demonstrate: (1) that the non-resident purposely availed himself of the benefits of the forum state by establishing minimum contacts with the state; and (2) that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice. *Mullins*, 564 F.3d at 398.

"Minimum contacts" can give rise to either specific personal jurisdiction or general personal jurisdiction. *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001). Specific jurisdiction exists if the asserted claims arise out of or relate to the defendant's contacts with the forum. *Cent. Freight Lines Inc. v. APA Transp. Corp.*, 322 F.3d 376, 381 (5th Cir. 2003). The contacts must indicate that the nonresident defendant "purposefully availed himself of the benefits of the forum state." *See Hanson v. Denckla*, 357 U.S. 235, 253 (1958); *Brown v. Flowers Indus. Inc.*, 688 F.2d 328, 333 (5th Cir. 1982). In contrast, general jurisdiction exists for any cause of action if the nonresident defendant's contacts with the forum are so substantial, continuous, and systematic that

4

the defendant is essentially "at home" in the forum. *See Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014) (citing *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014)).

### III. Analysis

GHA bears the burden of showing a prima facie case of this Court having personal jurisdiction over RBC. *See Johnston*, 523 F.3d at 609. GHA argues that RBC is subject to both general and specific personal jurisdiction in this case. As will be evident from the discussion below, the Court, while convinced that the result is correct, is quite sure that the opposite result would be much more equitable. As now-Justice Gorsuch has written, "[i]ndeed, a judge who likes every result he reaches is very likely a bad judge, reaching for results he prefers rather than those the law compels." *A.M. v. Holmes*, 830 F.3d 1123, 1170 (10th Cir. 2016) (Gorsuch, J., dissenting). While this Court is not enthralled with the result in this case, it also understands that it is quite possible that the Southern District of New York will also reach the decision that it does not have jurisdiction over GHA.[4] If so, the parties will not be left without remedies. RBC could sue GHA in Texas or GHA could sue RBC in New York. With that being said, the Court will address each category of personal jurisdiction in turn.

#### A. General Personal Jurisdiction

General personal jurisdiction permits the Court to hear "any and all claims" against a defendant business entity when the defendant's "affiliations with the State are 'so continuous and systematic' as to render them essentially at home in the forum State." *Daimler*, 571 U.S. at

---

[4] This Court has no way of knowing what result the Honorable Judge of the Southern District of New York will reach with regard to the jurisdictional issue in *RBC Capital Markets LLC v. Garcia Hamilton & Associates, L.P.*, S.D.N.Y. Case No. 1:19-cv-10247-NRB. Obviously, this Court is not conversant with the record in that case; nor is it well-versed with the jurisdictional law of the Second Circuit. That being the case, one should not read this opinion as being a suggestion, prediction, or direction as to how the Southern District of New York might rule. That would be well beyond this Court's purview. Instead, the Court includes the comment in the text solely to make the parties consider the possibility that neither court would have jurisdiction and to make sure they know, if that happens, they are not left remediless.

127 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). In other words, general personal jurisdiction is "all-purpose jurisdiction." *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017) (collecting cases); *see also In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*, 888 F.3d 753, 778 (5th Cir. 2018) (general jurisdiction "allows for jurisdiction over all claims against the defendant, no matter [its] connection to the forum.") (citations omitted).

The paradigm hallmarks of general personal jurisdiction for a "corporation" are its place of incorporation and its principal place of business.[5] *Monkton*, 768 F.3d at 432 (citing *Daimler*, 571 U.S. at 139). In an "exceptional case," however, "a corporate defendant's operations in another forum 'may be so substantial and of such a nature as to render the corporation at home in that State.'" *Tyrrell*, 137 S. Ct. at 1558 (quoting *Daimler*, 571 U.S. at 139 n.19)). Courts have made clear that it is "incredibly difficult" for a plaintiff to establish general jurisdiction under the "exceptional case" doctrine (i.e., in a forum other than state of incorporation or principal place of business). *Frank*, 947 F.3d at 336 (quoting *Monkton*, 768 F.3d at 432).

The textbook example of an "exceptional case" is *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437 (1952). *See, e.g., Frank*, 947 F.3d at 336 ("*Perkins* . . . 'remains the textbook case of general jurisdiction appropriately exercised over a foreign corporation that has not consented to suit in the forum.'") (quoting *Goodyear*, 564 U.S. at 928). In *Perkins*, the defendant was a Philippine company that ceased its operations in the Philippines during World War II. 342 U.S. at 447. The defendant's president moved to Ohio, where he continued his role in

---

[5] The Court recognizes that RBC is a limited liability company, not a corporation. Courts routinely refer to the *Daimler* test and use the term "corporation" when discussing general jurisdiction for both incorporated and non-incorporated business entities. *See Frank v. P N K (Lake Charles) L.L.C.*, 947 F.3d 331, 338 n.10 (5th Cir. 2020) ("[T]he entity type is not germane to this jurisdictional analysis; instead it is the company's domicile that merits attention."); *see also, e.g., Head v. Las Vegas Sands, LLC*, 760 F. App'x 281, 282, 284 (5th Cir. 2019) (analyzing a group of defendants that includes limited liability companies); *Whitener v. Pliva, Inc.*, 606 F. App'x 762, 764–65 (5th Cir. 2015) (analyzing a limited partnership).

6

overseeing the company's activities. *Id.* at 447–48; *see also Patterson v. Aker Sols. Inc.*, 826 F.3d 231, 235 (5th Cir. 2016) (listing the *Perkins* defendant's contacts with Ohio as: (1) maintaining an office; (2) keeping company files there; (3) corresponding from Ohio about business and employees; (4) paying salaries to the company's president and two secretaries; (5) maintaining company bank accounts; (6) using an Ohio bank as a transfer agent for stock of the company; (7) holding several directors' meetings; (8) managing company policies concerning rehabilitation of company property in the Philippines; and (9) sending funds to pay for projects in the Philippines) (citing *Perkins*, 342 U.S. at 447–48). The Supreme Court held that the Philippine company was subject to general jurisdiction in Ohio because "Ohio was the corporation's principal, if temporary, place of business." *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 780 n.11 (1984); *see also Perkins*, 342 U.S. at 448.

In this case, the parties agree that RBC is a limited liability company organized under Minnesota law and its principal place of business is in New York.[6] (Doc. No. 1 at 2; Doc. No. 10 at 5). There is no dispute that RBC is subject to general personal jurisdiction in those forums. *See, e.g., Monkton*, 768 F.3d at 432. Further, it is somewhat conceded that RBC is not subject to general jurisdiction in Texas under the primary rules set out in *Daimler*. Nevertheless, GHA argues that the RBC is also subject to general jurisdiction in Texas under the "exceptional case" doctrine. (*See, e.g.*, Doc. No. 13, Ex. 1 at 4 ("Defendant's contacts with the state of Texas are 'so continuous and systematic' as to render it essentially at home in the forum state.") (citations omitted)).

---

[6] Neither party briefed the identity and location of RBC's members. Thus, the Court cannot determine RBC's citizenship for purposes of diversity jurisdiction. *See, e.g., MidCap Media Fin., L.L.C. v. Pathway Data, Inc.*, 929 F.3d 310, 313 (5th Cir. 2019) ("'[T]he citizenship [under 28 U.S.C. § 1332(c)(1)] of a[n] LLC is determined by the citizenship of all of its members.") (alternation in original) (quoting *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008)). It would certainly be ironic if one of these members is a Texan. If that were the case, RBC would not be subject to personal jurisdiction in Texas, yet be a Texas citizen for diversity purposes.

To support its "exceptional case" position, GHA points to the fact that RBC has offices in Austin, Dallas, Houston, and San Antonio;[7] and these four offices employ nearly 250 employees.[8] (Doc. No. 13, Ex. 1 at 3, 10, 12). RBC also allegedly has an entire division focused exclusively on wealth management in Texas. (*Id.* at 3). Moreover, GHA states that, since 2016, it has engaged in several transactions with RBC and most began with RBC's employee, Phillip Smith, who works in Dallas. (*Id.* at 9–10; *see also* Doc. No. 11, Ex. 3). Similarly, GHA presented evidence that between May 2018 and May 2019, the parties participated in approximately 245 trades with each other. (Doc. No. 11; Doc. No. 11, Exs. 1 and 2).

RBC's physical presence in Texas and business transactions conducted and/or directed to the State certainly constitute continuous and systematic contacts and would have been enough to trigger general jurisdiction under the prevailing standard before *Daimler*. The "exceptional case," however, requires more. The proper inquiry now is "not whether a foreign corporation's in-forum contacts can be said to be in some sense 'continuous and systematic,' it is whether the defendant's 'affiliations with the State are *so* 'continuous and systematic' as to render [it] essentially at home in the forum State.'" *Daimler*, 571 U.S. at 138–39 (emphasis added) (quoting *Goodyear*, 564 U.S. at 919).

As the Supreme Court has explained the general jurisdiction analysis "calls for an appraisal of the corporation's activities in their entirety." *Tyrrell*, 137 S. Ct. at 1559 (internal citation and quotation omitted). For example, in *Tyrrell* the defendant was a railroad company who had over 2,000 miles of railroad track in Montana, employed approximately 2,100 individuals in Montana,

---

[7] RBC objects to this evidence as inadmissible for lack of foundation and lack of personal knowledge. (Doc. No. 21 at 2 & n.2). It does not deny the evidence's accuracy. The Court overrules RBC's objections.

[8] In contrast, GHA only maintains one office, which is in Houston, Texas. (Doc. No. 11, Exs. 1 and 4). Additionally, GHA only has 34 employees, all of whom work in Houston. (Doc. No. 11, Ex. 1 at 3).

and maintained an automotive facility in Montana. *Id.* at 1554. Obviously, these contacts with Montana, like RBC's with Texas, are significant. Rather than simply looking at the extent of the railroad company's contacts with Montana, the Supreme Court qualitatively analyzed the defendant's activities in their entirety. *See id.* at 1554, 1559. The railroad tracks in Montana only amounted to 6% of the defendant's total track mileage. *Id.* at 1554. The defendant's employees in Montana were less than 5% of its total work force. *Id.* Moreover, the railroad company's operations in Montana generated less than 10% of its total revenue. *Id.*

When the contacts with Montana were viewed alongside the defendant's total business contacts, the Supreme Court concluded that the railroad company could not be considered "at home" in that State. *Id.* at 1559. In short, "[a] corporation that operates in many places can scarcely be deemed at home in all of them. Otherwise, 'at home' would be synonymous with 'doing business' tests framed before specific jurisdiction evolved in the United States." *Daimler*, 571 U.S. at 139 n.20 (citation omitted).

GHA did not present evidence to enable this Court to engage in this kind of qualitative analysis of RBC's total business operations. Thus, the Court is unable to compare RBC's connections to Texas with its nationwide connections. Since GHA has the burden of making a prima facie showing of personal jurisdiction, the absence of evidence must be construed against it. *See Johnston*, 523 F.3d at 609. RBC clearly has significant Texas operations. Nevertheless, the Court is not convinced, given the standards set in *Tyrrell*, that four offices, a division focused on wealth management in Texas, 240 employees, and a business presence in Texas (i.e., generating at least a few hundred transactions each year) are substantial enough to render RBC at home here. Further, unlike the defendant in *Perkins*, there is no evidence that: (1) any of RBC's leading executive employees have worked in Texas; (2) RBC has held any directors' meetings in Texas;

9

or (3) RBC has managed its company-wide policies from a locale in Texas. *See Perkins*, 342 U.S. at 447–48.

At the very least, according to the company's website, RBC has physical locations in 21 states outside of New York and Texas, with five of those states having multiple offices. *United States Offices*, RBCCM, https://www.rbccm.com/en/offices/united-states.page (last visited June 10, 2020). RBC's business operations in these various states may or may not rival its operations in Texas. RBC, however, can "scarcely be deemed at home in all of" these states. *See Daimler*, 571 U.S. at 139 n.20. Accordingly, the Court reluctantly finds that it does not have general personal jurisdiction over RBC.

**B.  Specific Personal Jurisdiction**

In order to satisfy constitutional due process requirements for specific jurisdiction, GHA must show: (1) RBC purposefully directed its activities or availed itself of the privilege of the forum state; (2) GHA's claims arise out of or relate to the defendant's contacts with the state; and (3) the exercise of personal jurisdiction be fair and reasonable. *See, e.g., Carmona v. Leo Ship Mgmt.*, 924 F.3d 190, 193 (5th Cir. 2019). As discussed above, RBC has much more than a passing physical presence in Texas and intentionally directs at least some portion of its business to Texas. The Court therefore concludes that RBC has purposefully availed itself of the privileges of Texas. *Cf. Tyrrell*, 137 S. Ct. at 1559 ("In short, the business [that the defendant] does in Montana is sufficient to subject the railroad to specific personal jurisdiction in that State on claims related to the business it does in Montana.").

The fact that RBC could be subject to specific jurisdiction in Texas for some lawsuits, however, is not enough for the Court to have specific jurisdiction over RBC in *this particular dispute* between GHA and RBC, unless the claims in question arise out of or relate to those

contacts. Similarly, RBC's history of doing business with GHA (including the approximately 245 transactions between May 2018 and May 2019) cannot in and of itself establish specific jurisdiction. "Whether specific jurisdiction can be properly asserted over a non-resident defendant is dependent on 'the relationship among the defendant, the forum, and *the litigation*.'" *Zoch v. Magna Seating (Ger.) GmbH*, No. 18-41151, 2020 U.S. App. LEXIS 13029, at *8 (5th Cir. Apr. 22, 2020) (emphasis added) (quoting *Walden v. Fiore*, 571 U.S. 277, 283–84 (2014)). In other words, "'the *suit* must arise out of or relate to the defendant's contacts with the *forum*.'" *Id.* (quoting *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1780 (2017) (emphasis in original)). "[A] defendant's general connections with the forum are not enough." *Bristol-Myers*, 137 S. Ct. at 1781; *see also id.* ("[A] corporation's continuous activity of some sorts within a state . . . is not enough to support the demand that the corporation be amendable to suits unrelated to that activity.") (internal citations and quotations omitted).

Consequently, the Court can only have specific jurisdiction over RBC if its contacts with Texas arise out of or relate to GHA's May 9, 2019 sale of DuPont bonds to RBC. That transaction—which RBC says was actually 33 separate transactions (Doc. No. 10, Ex. 1 at 14)—began on May 9th when GHA's employee Jeff Detwiler sent a Bloomberg terminal message to RBC's Matt Wagoner to follow up on the parties' May 8th deal.[9] (Doc. No. 10, Ex. 1 at 11). After answering Detwiler's question about the May 8th transaction, Wagoner told Detwiler that he "[c]ould use more [DuPont bonds] if you have more to go." (Doc. No. 10, Ex. 1 at 11). The parties then agreed to the terms of the contract and conducted the sale.

---

[9] Detwiler is a Partner/Portfolio Manager for GHA, who works at GHA's "sole office" in Houston, Texas. (Doc. No. 11, Ex. 4 at 2). Wagoner is the Vice President in Credit Trading for RBC and works in RBC's New York City office. (Doc. No. 10, Ex. 1 at 5).

11

GHA argues that the May 9th transaction arises out of or relates to RBC's contacts with the State of Texas.[10] In particular, it states that RBC is subject to specific jurisdiction because it knowingly entered into a contract with a Texas company. (*See* Doc. No. 11 at 1). Moreover, GHA asserts that the parties' contract was "formulated, performed, and completed in Texas."[11] (*Id.* at 7). Lastly, GHA claims that Wagoner's inquiry as to whether GHA had additional DuPont bonds was the initiation of the contract, which "clearly indicate[s] [RBC's] willingness to avail itself to the Texas courts."[12] (*Id.* at 9).

When analyzing minimum contacts for a breach of contract case, the court is to utilize a "highly realistic approach" rather than "mechanical tests" or "theories of the place of contracting or of performance" to determine whether personal jurisdiction exists. *Jones v. Artists Rights Enf't Corp.*, 789 F. App'x. at 423, 426 (5th Cir. 2019) (internal quotation marks omitted)). This approach considers "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" to determine whether "the defendant purposefully established minimum contacts" with the forum state. *Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 223 (5th Cir. 2012) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479 (1985)).

---

[10] Both parties agree that RBC sent multiple emails and letters to Texas demanding a refund and/or discussing litigation. (*See, e.g.*, Doc. No. 10, Ex. 1 at 20–51). There is no dispute that these emails and letters are post-transaction and are therefore unrelated to facts which led to the litigation and therefore are not relevant for determining personal jurisdiction. *See, e.g., Ham v. La Cienega Music Co.*, 4 F.3d 413, 416 (5th Cir. 1993).

[11] RBC's Team Lead for the Depository Trust Company ("DTC") settlements department filed a declaration that is uncontroverted by GHA. (*See* Doc. No. 10, Ex. 1 at 13–14). According to that declaration, the transfer of GHA's DuPont bonds and RBC's money was electronically performed through the settlement services of The Depository Trust & Clearing Corporation, a corporation located in New York. (*Id.*).

[12] RBC contends that it was Detwiler (and GHA) that initiated the conversation, which led to the disputed transaction. (Doc. No. 12 at 3). As explained below, the Court does not find the resolution of this dispute is necessary for it to determine whether specific jurisdiction over RBC is appropriate.

Under the "highly realistic approach," the fact that RBC entered into a contract with a company it knew was in Texas is insufficient to establish personal jurisdiction. *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 344 (5th Cir. 2004) ("It is well established that merely contracting with a resident of the forum state is insufficient to subject the nonresident to the forum's jurisdiction.") (internal citation and quotation omitted). Additionally, "the exchange of communications [to the forum state] in the course of developing and carrying out the contract [is] in itself . . . insufficient to constitute purposeful availment." *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986); *see also McFadin v. Gerber*, 587 F.3d 753, 760 (5th Cir. 2009) ("[C]ommunications relating to the performance of a contract themselves are insufficient to establish minimum contacts."). The same is true of negotiations. *See Trois v. Apple Tree Auction Ctr., Inc.*, 882 F.3d 485, 489 (5th Cir. 2018). Moreover, the Fifth Circuit does not consider the fact that payments were transferred to Texas to establish minimum contacts with the State. *See, e.g., Jones*, 789 F. App'x. 423, 426 (5th Cir. 2019) (citing *Hydrokinetics, Inc. v. Ala. Mech., Inc.*, 700 F.2d 1026, 1029 (5th Cir. 1983)).

Realistically, with respect to the sale in question, RBC's contacts with Texas are: (1) brief communications and negotiations with GHA via Bloomberg instant messages concerning the May 9th transaction; (2) entering into the contract with GHA (again, via online instant message); and (3) having payments electronically sent to Texas. The Court cannot say that these activities were "directed" at Texas; instead, RBC's main contact with Texas in this case is based on the fortuity that GHA happens to reside in Texas. *Cf. Moncrief Oil Intern. Inc. v. OAO Gazprom*, 481 F.3d 309, 312 (5th Cir. 2007).

The Court may also consider the terms of the contract and the parties' actual course of dealing to determine whether RBC purposefully availed itself to Texas. *Burger King*, 471 U.S. at

13

479. The only relevant contractual terms in the record before the Court are the number of DuPont bonds that were purchased and the price per bond, neither of which have a particular connection to Texas. As for their course of dealing, the parties allegedly have a somewhat extensive history of doing business with each other, as described above. GHA has not identified, however, any information in the prior transactions that would have put RBC on notice that substantial performance in, or additional connection with, Texas was required to complete their contracts. *Cf. id.* at 480–81 (finding that course of dealing confirmed that decision making authority was vested in Florida, which precluded the argument that the defendant reasonably believed he had no reason to anticipate litigation outside of Michigan); *Electrosource, Inc. v. Horizon Battery Techs., Ltd.*, 176 F.3d 867, 872 (5th Cir. 1999) ("[T]he actual course of dealing between Electrosource and HBTL involved wide reach contacts and contemplated future consequences within the forum state."). Here, it appears that the prior transactions, like the ones at issue in this case, were simple electronic exchanges of bonds and money.

Although RBC has purposefully availed itself of the benefits and protections of Texas, those availments are unrelated to the substance of this case. Since specific personal jurisdiction requires the lawsuit to arise from or relate to the defendant's minimum contacts with the forum, GHA's failure to make a prima facie showing that RBC's contacts with Texas related to this case amount to more than being random, fortuitous, or coincidental is a fatal defect. *See Bristol-Myers*, 137 S. Ct. at 1780; *Carmona*, 924 F.3d at 193.

Accordingly, the Court finds that GHA has failed to carry its burden of proving that RBC is subject to this Court's specific personal jurisdiction for this particular breach of contract case. As such, the Court lacks personal jurisdiction over RBC.

### C. Motion to Transfer to the Southern District of New York

Having decided that this Court does not have personal jurisdiction over RBC, it must now decide whether to transfer the case to the Southern District of New York or to dismiss GHA's claims against RBC. A district court in which a case is filed and where venue lies in the wrong district may transfer the case "to any district or division in which it could have been brought," provided the transfer is in the interest of justice. 28 U.S.C. § 1406(a). It is well-settled in the Fifth Circuit that 28 U.S.C. § 1406(a) allows a court to transfer a case when it lacks personal jurisdiction over the defendant. *See, e.g., Herman v. Cataphora, Inc.*, 730 F.3d 460, 466 (5th Cir. 2013); *Bentz v. Recile*, 778 F.2d 1026, 1027 (5th Cir. 1985); *Koehring Co. v. Hyde Const. Co.*, 324 F.2d 295, 298 (5th Cir. 1963). RBC urges the Court to transfer the case under 28 U.S.C. § 1406(a) so that GHA's declaratory judgment case can be heard alongside RBC's breach of contract claims.

GHA did not address in its briefing to this Court whether it preferred dismissal or transfer in the event that the Court finds that personal jurisdiction was lacking. In RBC's lawsuit against GHA in the Southern District of New York, however, GHA has filed a motion to dismiss arguing, among other things, that the Southern District of New York lacks personal jurisdiction over it and is an improper venue. (*See* S.D.N.Y. Case No. 1:19-cv-10247-NRB at Doc. No. 9). If GHA is correct, then transferring this case to New York would be improper under § 1406(a). *See* 28 U.S.C. § 1406(a) (permitting the transfer of a case to "to any district or division *in which it could have been brought*.") (emphasis added). Indeed, if GHA's allegations are accurate, then GHA's contacts with New York are much less than RBC's in Texas. GHA has also requested that the Southern District of New York transfer RBC's lawsuit to this venue. (*See* S.D.N.Y. Case No. 1:19-cv-10247-NRB at Doc. No. 9).

Even assuming the Southern District of New York is a proper court for the parties to litigate their claims against one another, the Court is not convinced it would be in the interest of justice to transfer this case. Typically, courts employ 28 U.S.C. § 1406(a) transfers to protect plaintiffs against procedural bars to refiling claims, such as a statute of limitations bar. *See, e.g., Koehring*, 324 F.2d at 297 (recognizing that "the interest of justice" may require a transfer under § 1406(a) to avoid penalizing a plaintiff with "time-consuming and justice-defeating technicalities," in that case, a statute of limitations bar) (internal citation and quotation omitted). The statute of limitations concern is not present in this case. First, all of GHA's claims are for declaratory relief related to the causes of action that RBC has included in the New York lawsuit. Second, GHA has not yet had to file an answer to RBC's complaint or file a counterclaim in that litigation.

Further, the statute of limitations for a breach of contract is four years in Texas and six years in New York. *See* TEX. CIV. PRAC. & REM. CODE § 16.004(a); N.Y. C.P.L.R. § 213(2). The contract in dispute was allegedly breached, if at all, in 2019. Accordingly, the limitations period has not run, nor is it about to run, on GHA's claims in either venue and will not do so anytime soon.

Lastly, although not expressly argued to this Court, GHA's actions in this case and pleadings in the Southern District of New York make clear that it would oppose a transfer. "Where a plaintiff who cannot litigate in a particular forum opposes a transfer . . . 'the court has no purpose in forcing the plaintiff to litigate its claim in another court.'" *Zapata v. HSBC Holdings PLC*, No. 1:16-CV-030, 2017 WL 6939210, at *8 (S.D. Tex. Oct. 17, 2017) (quoting *Modern Mailers, Inc. v. Johnson & Quin, Inc.*, 844 F. Supp. 1048, 1056 (E.D. Pa. 1994)). The Court finds it would not be in the interest of justice to mandate that GHA litigate its declaratory action claims in the Southern District of New York.

Consequently, the Court holds that it would not be in the interest of justice to transfer this case to the Southern District of New York under 28 U.S.C. § 1406(a), and merely dismisses without prejudice GHA's claims against RBC.

### IV.     Conclusion

The ruling in this case complies with the dictates of the Supreme Court and the Fifth Circuit. Nevertheless, the Court considers the result to be an unfortunate one. It strikes the Court as quite unfair that a plaintiff whose only location is in Texas cannot sue a defendant who has an office in every major city in Texas and employs hundreds of people here; especially when the plaintiff never stepped foot outside of Texas to complete the transaction at issue. This result is compelled, however, by the Supreme Court's general jurisdiction jurisprudence set forth in *Daimler*, 571 U.S. 117, its limitations on finding special circumstances, *Tyrell*, 137 S. Ct. at 1559, and the controlling Fifth Circuit law on specific jurisdiction with electronic communications and activities.

As business and commerce continues to move almost entirely online, it is becoming increasingly more difficult to sue a defendant outside of its nerve center. There are two factors at work here: (1) the expansion of crucial business transactions being conducted only by email, internet, or telephone communications; and (2) the contraction of jurisdictional concepts. Moreover, if the other circuits are as restrictive as this one with regard to specific jurisdiction, many transactions that are conducted similarly will not give rise to long-arm jurisdiction in any state as email and the internet dominate commercial transactions and actual presence in a state becomes less and less important for commercial purposes.

That being said, under the controlling Supreme Court and Fifth Circuit precedents, the Court finds that Plaintiff Garcia Hamilton & Associates, L.P. has not carried its burden of showing

that the Court has general or specific personal jurisdiction over Defendant RBC Capital Markets, LLC. Additionally, the Court does not find that it would be in the interest of justice to transfer this case to the related case currently pending in the Southern District of New York.

Accordingly, the Court grants RBC's motion to dismiss (Doc. No. 10) for lack of personal jurisdiction under Rule 12(b)(2) and dismisses GHA's case without prejudice to refiling.

Signed at Houston, Texas, this 10th day of June, 2020.

Andrew S. Hanen
United States District Judge